Hillsborough, ⎱ No. 3924.
Aug. 11, 1950. ⎰

EMMA GUYER *v.* GERMAINE O. HORGAN.

*McLane, Davis, Carleton & Graf (Mr. Stanley M. Brown* orally),
for the plaintiff.

*Warren, Wilson, Wiggin & Sundeen* (*Mr. John N. Nassikas* orally), for the defendant.

BLANDIN, J.   The first question before us is whether reasonable men could find that the defendant kept control over the stairs upon which the plaintiff fell.   We believe they could, that this issue was properly submitted to the jury and in the absence of any error in the trial, as hereinafter shown, the defendant's exceptions are overruled.

Taking the evidence most favorable to the plaintiff, the jury could find the following facts.   The plaintiff was given a key to her apartment but the defendant never gave her a key to the outside door at the foot of the stairs, and she told the plaintiff not to lock this door as she wished it to remain unlocked for other tenants to use as an emergency exit in case of fire.   The defendant also told the other tenants that if they were trapped by fire blocking their own exit, they could go through the window on the top landing which is outside the plaintiff's door and go down the stairs to the street.   She testified in so doing she was "covering the law" and satisfying the fire inspectors. "They want two door [fire exits] in every apartment and every apartment got two door."   It also appeared that the door at the foot of the stairs could not be locked so as to prevent exit but could and on occasion was locked so that the plaintiff had to be let in by the defendant.   The plaintiff's mail box was located in the stairway inside the door.

The defendant gave directions concerning the use of the lights in the staircase hallway, kept one on her own meter and instructed the plaintiff not to let them burn all night.   About two months before the accident the defendant told the plaintiff with reference to the worn rubber mat that "she would fix everything up for us in the Spring." Shortly after the accident the defendant's son tacked around the edges of the hole in the mat.

It would serve no useful purpose to review the decisions in this and other jurisdictions in their myriad detail where courts have held that the landlord did or did not retain control.   Each case must stand on its own bottom.   We believe all the facts here taken together (cf. *Leonard* v. *Manchester ante,* 115) warrant the finding that the defendant kept control over the stairs and landings in question and was under a duty to keep them in reasonable repair.   *Menard* v. *Cashman,* 94 N. H. 428, 430; *Hunkins* v. *Company,* 86 N. H. 356, 357, and authorities cited.

The defendant next claims that the Court erred in refusing to grant

a certain request. In substance this was that evidence other tenants could use the stairway in emergency is not such a use as to constitute a reservation by the landlord for a use in common with other tenants as is required to impose a duty on the landlord to use ordinary care in keeping in safe condition such a stairway. Although the defendant concedes in that portion of her brief directed to argument on the motion for a nonsuit that the "narrow question" here is whether the defendant kept control over the stairway, the effect of this instruction is to make the reason why control was retained of paramount importance. This is not the issue here. Under our law the test is did the landlord keep control? *Rowland* v. *Bank*, 93 N. H. 246, 248; *Gobrecht* v. *Beckwith*, 82 N. H. 415, 417. Under all the facts here, we do not believe we are justified in holding in effect as a matter of law that this evidence was incompetent on the issue of control. The Court, therefore, properly denied the request and the charge given, instructing the jury to consider the emergency use of the stairs by other tenants along with other factors in deciding whether the defendant kept control, was correct. No other objections of merit appearing in the record the order is

*Judgment on the verdict.*

JOHNSTON, C. J., dissented: the others concurred.